## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN FARMER DE LA TORRE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No.  6:24-cv-03112-MDH |
| | ) | |
| CATHOLIC CHARITIES OF SOUTHERN | ) | |
| MISSOURI, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Defendant Roman Catholic Diocese of Springfield-Cape Girardeau's ("Diocese") Motion to Dismiss for Failure to State a Claim (Doc. 75). Defendant Diocese filed suggestions in support (Doc. 76), Plaintiff filed suggestions in opposition (Doc. 79) and Defendant Diocese has filed a reply. (Doc. 87). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Defendant Diocese's Motion to Dismiss for Failure to State a Claim is **GRANTED**.

## BACKGROUND

This case arises out of an alleged violation of Title VII of the Civil Rights Act of 1964 based on Plaintiff's sex and national origin. Plaintiff was the Director of Communications and Marketing for Defendant Catholic Charities of Southern Missouri, Inc. ("CCSM"), a non-profit corporation with its principal place of business in Springfield, Missouri. Plaintiff brings this action against CCSM, and the Diocese, a non-profit corporation with its principal place of business in Springfield, Missouri.

1

Plaintiff was hired as CCSM's Director of Communications and Marketing in December of 2018. Plaintiff filed a complaint to the U.S. Equal Employment Opportunity Commission ("EEOC") on December 21, 2023. The EEOC Complaint alleged discrimination that took place from November 30, 2022, to March 1, 2023. Plaintiff alleged in the EEOC Complaint that he complained to Human Resources about discrimination based on being a Hispanic male within CCSM. After his complaint to human resources, Plaintiff was then placed on a Performance Improvement Plan ("PIP") that he alleged was a retaliatory objective to generate pretests to discharge him from the job. Plaintiff alleged he received positive feedback from various people for his work on February 10, 2023, and February 15, 2023. The PIP was closed on February 15, 2023, and Plaintiff was fired from his job on March 1, 2023.

Plaintiff received a Determination and Notice of Rights letter issued on January 17, 2024. The letter stated the EEOC will not proceed further with its investigation and makes not determination about whether further investigation would establish violations of this statute. Plaintiff was made aware he had 90 days from the letter to file a lawsuit. Plaintiff commenced the current action on April 18, 2024. Plaintiff's First Amended Complaint alleges four counts: Count I – Retaliation Under Title VII against CCSM and the Diocese; Count II – Defamation against the Diocese; Count III – Negligent Supervision against the Diocese and Bishop; and Count IV – Civil Conspiracy to Retaliate against CCSM and the Diocese. The Court in its July 10, 2025 Order dismissed Count I – Retaliation Under Title VII against Defendant Diocese. (Doc. 73).

Defendant Diocese asks this Court to dismiss Plaintiff's First Amended Complaint against it citing that Plaintiff has not plausible alleged defamation, negligent supervision, or civil conspiracy to retaliate. The Court will take each argument in turn.

## STANDARD OF REVIEW

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## ANALYSIS

### I.       Count II – Defamation

Defendant Diocese first argues that Plaintiff has failed to allege that Leslie Eidson, the Diocesan Director of Communications, alleged statements were published by the Diocese to a third party, a required element to survive a motion to dismiss. Further, Defendant Diocese argues that Plaintiff's defamation claim also fails because the alleged statements are nothing but subjective opinion. Plaintiff argues that he has stated a claim for defamation. Specifically, Plaintiff argues that Ms. Eidson referred to Plaintiff's photography as muddy and later Defendant CCSM referenced this criticism in their description of Plaintiff's photography as "underwhelming," circulating the defamatory statement, and used it as the reason for termination. Plaintiff further

3

argues that the statements conveyed objectively verifiable facts about Plaintiff's professional competence and were provably false and damaging.

Under Missouri law, the elements of defamation are (1) publication (2) of a defamatory statement (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) that damages the plaintiff's reputation. *Turntine v. Peterson*, 959 F.3d 873, 882 (8th Cir. 2020) (citing *Overcast v. Billings Mut. Ins.*, 11 S.W.3d 62, 70 (Mo. 2000)). Under Missouri law, a person publishes a defamatory statement by communicating the defamatory matter to a third person. *Gray v. AT&T Corp.*, 357 F.3d 763, 765–66 (8th Cir. 2004) (citing *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. 1996). "However, 'communications between officers of the same corporation in the due and regular course of the corporate business, or between different offices of the same corporation are not publications to third persons.'" *Id*. (quoting *Hellesen v. Knaus Truck Lines, Inc.*, 370 S.W.2d 341, 344 (Mo. 1963). These intra-corporate communications made in the regular course of business do not constitute publications, because the communications are made within the corporation itself and not to a third party. *Lovelace v. Long John Silver', Inc.*, 841 S.W.2d 682, 685 (Mo. Ct. App. 1992). Missouri courts have broadly interpreted the intra-corporate immunity rule. *See Blake v. May Dep't Stores Co.*, 882 S.W.2d 688, 691 (Mo. Ct. App. 1994).

Taking the allegations in the Complaint as true for the purpose of a motion to dismiss, Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's Complaint states "[o]n or about February 28, 2023, the Diocese's Director of Communications Leslie Eidson made false and misleading statements that Plaintiff's photography was "muddy" and of "poor quality". *These statements were communicated internally* and formed the basis for Plaintiff's termination. (Complaint ¶¶ 28-29) (emphasis added). Plaintiff's Complaint clearly alleges that the alleged

4

defamatory statements Plaintiff complains about were communicated internally. As Missouri follows the intra-corporate communications rule, the statement made by Director of Communications Leslie Eidson would not be considered a publication under Missouri law. Because Plaintiff has failed to allege the first element necessary to state a claim for defamation, the Court finds that Defendant Diocese is entitled to dismissal of Plaintiff's Count II – Defamation. For the reasons stated, Defendant Diocese Motion to Dismiss Count II – Defamation is **GRANTED**.

## II.     Count III – Negligent Supervision

Defendant Diocese argues that Plaintiff fails to allege any fact that Ms. Eidson was acting outside the scope of her employment when she allegedly made the internal statements about Plaintiff's photographs. Plaintiff argues that he has satisfied the elements for a negligent supervision claim. Plaintiff further argues that the "scope of employment" inquiry and foreseeability are both fact-based questions, inappropriate for resolution on a motion to dismiss at the pleading stage.

To state a prima facie case of negligent supervision, a plaintiff must plead "(1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property." *Lipp v. Ginger C, L.L.C.*, No. 2:15-CV-04257-NKL, 2016 WL 1583663, at *10 (W.D. Mo. Apr. 19, 2016) (quoting *Cook v. Smith*, 33 S.W.3d 548, 553–54 (Mo. Ct. App. 2000)). The first element–a legal duty to protect the plaintiff–is narrowly defined under Missouri Law. This duty "runs not to an activity, but rather to an individual," *Bequette v. Buff*, 862 S.W.3d 921, 924 (Mo. Ct. App. 1993), and so plaintiffs must

allege "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Hill ex rel. Hill v. Herbert Hoover Bosy Club*, 990 S.W.3d 19 22 (Mo. Ct. App. 1999). Missouri courts have found that such duty arises in the context of an employer-employee relationship where the employee acts outside the scope of her employment. *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. Ct. App. 2000).

Taking the allegations in the Complaint as true for the purpose of a motion to dismiss, Plaintiff has failed to state a claim upon which relief can be granted. Here, Plaintiff's Complaint states:

> [t]he Diocese, through its Bishop, owed a duty to supervise its agents and employees, including its Director of Communications. The Diocese knew or should have known that its official was engaging in conduct designed to harm Plaintiff by fabricating a false pretext for termination. The Diocese failed to take corrective or preventative action. As a direct result, Plaintiff suffered loss of employment and reputational harm.

(Complaint ¶¶ 35-38). Plaintiff fails to state how Ms. Eidson was acting outside the scope of her employment when she made the statements about Plaintiff's photographs. Within her position, Ms. Eidson would have the ability to judge the quality of photographs as Director of Communications. While Plaintiff may disagree with the opinion of Ms. Eidson, he has not pleaded with particularity how she was acting outside the scope of her employment by her alleged remarks.   For the reasons stated, Defendant Diocese Motion to Dismiss Count III – Negligent Supervision is **GRANTED**.

### III.     Count IV – Civil Conspiracy to Retaliate

Defendant Diocese argues that Plaintiff has not alleged any fact that could be construed as an unlawful act or a meeting of the minds to violate Title VII or a civil conspiracy actionable under Missouri law. Defendant Diocese further argues that retaliation is the type of wrong Title VII was meant to cover and therefore, liability for retaliation is limited to the statutory scheme provided by

Title VII. Plaintiff argues that he has stated a claim for civil conspiracy to retaliate. Plaintiff additionally argues that the criticism of his photo by the Director of Communications was later adopted by CCSM in Plaintiff's termination and service letter as justification but yet those same photos were subsequently published thousands of time raising questions as to whether that critique was pretextual and jointly developed to justify termination. Lastly, Plaintiff argues that tort-based conspiracy claims are not preempted by Title VII and may proceed even between affiliated entities where legal separateness and independent motivation exists.

Under Missouri law, "[a] 'civil conspiracy' is an agreement or understanding between persons to do an unlawful act, or use unlawful means to do a lawful act." *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 780–81 (Mo. 1999) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997)). To state a claim for civil conspiracy, one must plead the following elements: "(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful or overt acts, and (5) resulting damages." *Id.* at 781 (citing *Rice v. Hodapp*, 919 S.W.3d 240, 245 (Mo. banc 1996)). "[i]f [the] tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Id.* (citing *Rice*, 919 S.W.2d at 245).

Taking the allegations in the Complaint as true for the purpose of a motion to dismiss, Plaintiff has failed to state a cause of action upon which relief can be granted. Here, Plaintiff's Complaint alleges:

> The Diocese and [CCSM], through their agents and leadership, engaged in a concerted plan to remove Plaintiff from his role under false pretenses. The communications official at the Diocese initiated a knowingly false statement that became the rationale for termination. [CCSM] acted in reliance on or in agreement with this false information. The coordinated timing and actions of both entities demonstrate a shared intent and mutual participation in retaliatory conduct.

7

(Complaint ¶¶ 40-43). While Plaintiff appears to have sufficiently made a claim for civil conspiracy to retaliate, the Court finds that this count is preempted by Title VII. The Eighth Circuit has stated that "Title VII provides the exclusive remedy for employment discrimination claims crated by its own terms, its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the Constitution." *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012). Plaintiff alleges "[o]n November 30, and December 2, 2022, Plaintiff engaged in protected activity by raising concerns regarding potential discrimination and unethical conduct within Catholic Charities." (Complaint ¶ 8). While Plaintiff does not expand on what protected activity, he cites Title VII of the Civil Rights Act of 1964. (Complaint ¶ 4). The allegations in Plaintiff's Count IV stem from a theory that Defendants acted to retaliate based on his concerns regarding potential discrimination and unethical conduct that is prohibited by Title VII. Plaintiff does not raise a violation of his rights secured by the Constitution and thus Title VII is the exclusive remedy in this case. Based off the Complaint Plaintiff has failed to state a claim for relief on Count IV as the exclusive remedy for a Title VII violation is through a Title VII claim. For the reasons stated, Defendant Diocese Motion to Dismiss Count IV is **GRANTED**.

## CONCLUSION

For the reasons stated, Defendant Diocese Motion to Dismiss Plaintiff's Count II – Defamation is **GRANTED**. Defendant Diocese Motion to Dismiss Plaintiff's Count III – Negligent Supervision is **GRANTED** and Defendant Diocese's Motion to Dismiss Plaintiff's Count IV – Civil Conspiracy to Retaliate is **GRANTED**. Defendant Diocese is hereby dismissed from the case.

**IT IS SO ORDERED**.

DATED: August 26, 2025

*/s/ Douglas Harpool*

**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**
